**Douglas M. BLEVINS, Plaintiff,**

v.

**NEW HOLLAND NORTH AMERICA, INC., Defendant.**

**No. 1:99CV00101.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 12, 2001.

Mary Lynn Tate, The Tate Law Firm, Abingdon, VA, for Douglas M. Blevins.

Calvin S. Spencer, Jr., McGuire, Woods, Battle & Boothe, Charlottesville, VA, Brickford Y. Brown, Dennis Joseph Whelan, III, McGuire Woods LLP, Richmond, VA, for New Holland North America, Inc.

## OPINION AND ORDER

JONES, District Judge.

In this products liability action, both parties have moved in limine to exclude certain expert witness testimony to be presented at trial by the opposing party. In addition, the defendant manufacturer has moved in limine to exclude evidence of prior product accidents. The motions will be denied in part and granted in part.

### I

The plaintiff in this case, Douglas M. Blevins, seeks damages because of injuries received by him in a farm accident involving a hay baler manufactured by the defendant, New Holland North America, Inc. ("New Holland"). The court earlier granted partial summary judgment to the defendant as to the plaintiff's claim of breach of warranty, leaving for trial the claims based on negligence. *See Blevins v. New Holland N. America, Inc.*, 97 F.Supp.2d 747, 751 (W.D.Va.2000). In advance of trial, the parties have presented three motions

in limine for resolution, based on deposition testimony and expert disclosure statements. Those motions have been briefed and argued, and are ripe for decision.

The alleged defective product designed and manufactured by New Holland is a Model 644 Large Round Baler, an agricultural implement designed to be towed and powered by a tractor and used to bale hay. After field-dried hay is picked up by the baler, it is made into a round bale and discharged through the rear tail gate of the machine.

On the day of the accident, the plaintiff, a farm worker, was operating a recently-purchased Model 644 in a hay field of his employer, Vannoy Farms. After he had completed a bale along the side of a hill, he stopped the tractor and reduced but did not kill the engine, thus allowing the baler's machinery to continue to run.[1] He then got down off of the tractor and walked to the rear of the baler as the tail gate was opening to discharge the newly-made bale, so that he could manually prevent the bale from rolling down the hill. After handling the bale, and as Blevins walked beside the baler to resume his seat on the tractor, he noticed some hay sticking out of the baler and grabbed at it with his right hand in order to pull it out. Instead, his hand and arm were pulled into the machine to a "nip point" between a belt and a scraper. Unable to extricate himself for some minutes, he eventually used his pocket knife to cut the belt and free his arm.

As a result of the accident, Blevins suffered severe injuries to his hand and arm, including amputation of his thumb and index finger.

### II

Pursuant to Federal Rule of Civil Procedure 26(a)(2), the plaintiff has disclosed the opinions of his expert, John B. Sevart, and the defendant moves to exclude some, but

---

1. It appears that the Model 644 operates through a power take-off ("PTO") from the tractor at the same revolutions per minute as the tractor's engine.

not all, of those opinions as unreliable or legally insufficient.

In his disclosure statement, the expert Sevart expressed the following opinions:

1. The design of the round baler could have been such that the belt drive system would disengage whenever the tail gate was lifted.

2. The round baler could have been provided with an emergency stop system that would enable a person caught in the rotating components of the round baler to stop the powered motion of the machine and prevent further injuries. The emergency stop mechanism could be made to be actuated by a pull cord located along the areas where it is foreseeable that an operator is likely to be entangled in the machine.

3. The round baler could have been provided with guarding which would enclose the nip points on the machine. The guarding could have been provided with extended side panels that would enclose the nip points at the sides of the machine when the tail gate is lifted.

4. Appropriate warnings and instructions should have been provided with/on the round baler, identifying the hazards present in the operation and maintenance of the machine and providing clear, practical instructions for avoiding the hazards while operating the round baler.

(Letter from Sevart of 1/19/00, at 2–3.)

New Holland contends that above opinions numbered three (concerning the emergency stop system) and four (concerning warnings and instructions) are inadmissible. In addition, New Holland objects to Sevart's opinion, expressed in his disclosure and in his deposition testimony, that Blevins' injuries were "substantially enhanced" because of the absence of an emergency stop system. Finally, referring to Sevart's deposition testimony that "more guarding" is required by govern-ment regulation in Germany than in the United States (Sevart Dep. at 156–57), New Holland objects to any testimony by the witness concerning "foreign regulations or standards" relating to the machine in question.

Sevart is a licensed professional engineer and a former professor of mechanical engineering at Wichita State University. He is a frequent plaintiff's expert in personal injury cases, expressing opinions on such varied subjects as the design of an earth mover's breaking and steering systems, *see Garst v. Gen. Motors Corp.*, 207 Kan. 2, 484 P.2d 47, 54–57 (1971); a camp stove's gas cap, *see Volz v. Coleman Co.*, 155 Ariz. 563, 748 P.2d 1187, 1188–90 (1986); operator safety restraints on forklifts, *see Goldman v. Phantom Freight, Inc.*, 162 Mich.App. 472, 413 N.W.2d 433, 435 (1987); and safety devices and warnings on railroad hopper cars, *see Garay v. Missouri Pac. R.R.*, 60 F.Supp.2d 1168, 1168–71 (D.Kan.1999).

Sevart has a particular interest in emergency stop systems for agricultural machinery and has written several articles on the subject. In a paper Sevart prepared for presentation to a 1983 meeting of the American Society of Agricultural Engineers, he reported that while emergency stop systems are frequently found on manufacturing equipment, they are not generally used on agricultural equipment, even though agricultural equipment can be equally as dangerous. Sevart described the problem as follows:

An all too common accident associated with agricultural equipment is one in which the operator becomes entangled in a powered machine and is unable either to free himself or to turn off the machine, or even to declutch the power. Typically, the initial injury is not unduly severe and may not produce either serious lacerations or broken bones. However, as live pressure is held on the trapped hand, arm or leg, extensive damage is done to the muscle structure and to the nerve and circulatory sys-

tems. In time, serious burn injury may result from friction. This type of accident has occurred frequently where pressure feed rolls are present such as on round-bale hay balers.

J.B. Sevart, *Design of Emergency Stop Systems for Agricultural Machinery* (American Soc'y of Agric. Eng'rs 1983) 2. (New Holland's Mot. in Limine Ex. G.)

According to Sevart, for towed—as opposed to self-powered—agricultural machinery, the most efficient emergency stop system is a positive mechanical stop on the drive shaft, activated by the operator pulling on a cable placed at a hazard location. *See id.* at 7–8. Sevart concluded that the concept of an emergency stop system for agricultural machinery is "technically and economically feasible and does not adversely affect the utility of the machinery." *Id.* at 10.

New Holland first attacks Sevart's opinions under the doctrines announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, particularly *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). New Holland does not contest Sevart's qualifications in terms of his education or experience. Rather, Sevart's opinion that the Model 644 should have contained an emergency stop system is unreliable according to New Holland because (1) Sevart failed to perform any "scientific testing"; (2) his views have not been "peer reviewed"; and (3) an emergency stop system has not been installed on any hay balers manufactured in the United States, or imposed by any governmental standard or regulation in this country.

Federal Rule of Evidence 702, as amended effective December 1, 2000, has adopted the *Daubert* principles, and states as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The advisory committee note to the amended rule succinctly describes the proper method of applying these principles:

*Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony.

Fed.R.Evid. 702 advisory committee's note.

■ Based on all of the circumstances, I find that the expert's opinion that the Model 644 should have been equipped with an emergency stop system is not excludable as unreliable. Sevart is an experienced professional engineer, with academic as well as practical credentials. He has carefully studied the issue and written about it under the official auspices of a recognized professional organization. He himself has designed and built at least ten emergency stop systems for various types of hay balers and corn pickers and after examining the hay baler in question is of the opinion that it would be feasible to install such a system on that model. While he may be wrong, the value and weight of this opinion are proper matters for the jury to determine.

■ New Holland also seeks to exclude Sevart's opinion on the ground that it "lacks sufficiency as a matter of law" (New Holland's Mot. in Limine at 8), because it fails to establish the required elements of a Virginia products liability claim. In particular, New Holland asserts that Sevart's expected testimony at trial will not establish that the lack of an emergency stopping system on the Model 644 violated any established governmental or industry safety standard or any reasonable consumer expectation. Relying on *Alevromagiros v. Hechinger Co.*, 993 F.2d 417 (4th Cir.1993), New Holland contends that in the absence of such proof, a products liability claim under Virginia law must fail.[2]

In *Alevromagiros*, a products liability action brought against the manufacturer of a ladder for defective design, the plaintiff had been injured when a ladder made and sold by the defendant bent and twisted, causing him to fall to the floor. The expert had never examined an undamaged ladder like the one involved in the accident and thus could not determine whether the design of the ladder conformed to the industry standards promulgated by the American National Standards Institute.

*Id.* at 419–20. Nevertheless, he testified that the ladder's design was unsafe.

At the close of the evidence, the trial judge directed a verdict against the plaintiff, remarking that:

Don't we have to have more than just somebody saying, I am an industrial engineer and I have looked at this ladder, it is the only one I have really looked at for this purpose, but I don't like it, there ought to be something else done to it? Doesn't there have to be more than that to make out a case of defective design?

*Id.* at 420.

The Fourth Circuit affirmed.

In the present case, unlike *Alevromagiros,* the record reflects that there are no relevant industry standards. No industry group or entity has issued a safety standard describing emergency stop systems for agricultural equipment. Moreover, it is admitted that the Model 644 has no such system and thus it was unnecessary for an expert to perform any tests to determine the product's compliance with any particular design standard. Indeed, New Holland has not suggested what particular testing it believes should have been performed by Sevart.

Accordingly, the present case is more like *Ford Motor Co. v. Bartholomew,* 224 Va. 421, 297 S.E.2d 675 (1982), a case that was distinguished by the Fourth Circuit in *Alevromagiros,* where no industry safety standards had yet been promulgated, and the expert was allowed to express an opinion that the product was unreasonably dangerous, based on a review of the literature, experiments and consultations with other experts, among other things. *See Bartholomew,* 297 S.E.2d at 679.

■ New Holland also contends that Sevart's testimony is insufficient because it does not establish any reasonable consumer expectation that the product should have an emergency stop system. Consumer expectation may be particularly impor-

2. The parties are agreed that Virginia substantive law applies to this diversity action.

tant in a case such as this where the evidence shows that no manufacturer has actually produced a hay baler with an emergency stop system. Since under our legal liability regime a manufacturer is not required to provide the safest conceivable design, but only meet prevailing safety standards, consumer expectation may show that there are legitimately higher standards than the industry has yet recognized or reached. *See Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1181 (4th Cir.1997).

While Sevart was not questioned directly concerning consumer expectation in his discovery deposition, his testimony shows the foundation for such an opinion. According to Sevart he has investigated approximately eighty accidents involving hay balers, and another hundred involving corn pickers. He currently serves on the "top safety committee" of the American Society of Agricultural Engineers. (Sevart Dep. at 66.) He is of the opinion that it is a "common occurrence" for farm workers to place themselves in the dangerous position that the plaintiff found himself in this accident. (*Id.* at 129.)

Of course, I have not yet heard all of the evidence at trial and thus it is unnecessary for me to rule conclusively whether the plaintiff has made out a case. At the present stage, however, ruling solely on the question raised by the defendant as to whether the expert's testimony is sufficiently relevant to be admissible, I will deny the motion in limine as to the opinion at issue.

■ New Holland also objects to Sevart's opinion that appropriate warnings

should have been posted in the area of the nip point that would have alerted an operator like Blevins to the risk. According to Sevart, based on his review of the scientific literature, the human "grip reflex reaction" inhibits a person from letting go immediately when an object gripped is suddenly pulled. (Sevart Dep. at 35–40.) This reaction increased the risk to Blevins when he attempted to pull on the pieces of straw, a risk that Sevart opined would not have been appreciated by Blevins. While the safest course is to disengage the power take-off and thus stop the moving belts before leaving the tractor, Sevart is of the opinion that a reasonable manufacturer should know that operators sometimes do not follow that precaution, and therefore a more explicit warning should have been posted.[3]

New Holland contends that Sevart's opinion that appropriate warnings should have been provided is inadmissible because the opinion is allegedly based on an incorrect factual foundation. However, because of Sevart's deposition testimony, I do not find that argument convincing. While Sevart agreed that he did not know for certain whether Blevins' literacy skills would have permitted him to understand the suggested warning, that is a matter of proof at trial. Moreover, it was Sevart's opinion that even if the operator could not comprehend the warning, it would likely serve to alert the operator's employer to the risk, leading to better safety training. New Holland objects to Sevart's testimony that Blevins likely sustained an enhanced injury because of the lack of an emergency stop system on the Model 644. According to Sevart, the presence of an emergency

---

**3.** Contrary to New Holland's argument that Sevart was unable to provide the wording of an appropriate warning, the transcript of his deposition shows that he provided an exemplar of such a warning decal. (Sevart Dep. at 98.) Although the machine apparently contained a warning decal that the operator should not leave the operator's position without disengaging the PTO, shutting off the tractor engine, and waiting for all movement to stop, the fact that such a procedure was not

followed does not necessarily preclude recovery, where there is evidence that it was foreseeable that the warning often would not be followed. *See Kinser v. Gehl Co.*, 184 F.3d 1259, 1268 (10th Cir.1999) (where decedent was killed as a result of entanglement in compression rollers of round hay baler, applying Kansas law), *abrogation on other grounds recognized by Weisgram v. Marley Co.*, 528 U.S. 440, 120 S.Ct. 1011, 1021, 145 L.Ed.2d 958 (2000).

stop system would not have prevented Blevins from being initially drawn into the belt, but the system would have allowed him to stop the machine within five seconds, thus avoiding "the serious burns and damage to the nerve and circulatory system . . . ." (Sevart Dep. at 108.)

New Holland contends that this opinion is beyond Sevart's competency since he is not a physician.

Because of Sevart's long experience in investigating accidents such as occurred here, he is doubtless qualified to express some type of an opinion that enhanced injury would likely have occurred because of the absence of an emergency stop system. The exact nature of such an opinion, however, is not presently clear from this record. Sevart is not a physician or apparently otherwise trained in human anatomy or physiology. Accordingly, the scope of his opinion may be limited. Since I will not be able to make that decision until I learn the exact opinion offered, I will deny the motion in limine.[4]

Finally, New Holland asks that I exclude any testimony by Sevart as to "foreign safety standards," or "tests performed in the furtherance of such standards." (New Holland's Mot. in Limine at 14.)

Without the nature and context of any testimony, and the foundation for it, I cannot exclude such testimony. It may or may not be admissible, but at this point I cannot make that determination. I know of no legal doctrine—nor has any been cited to me—that would make such evidence inadmissible under any circumstances. Both engineering principles and human nature transcend national boundaries, and thus under certain circumstances proof of foreign standards may be relevant and helpful to a jury in determining the issues.

**III**

The plaintiff has filed a motion in limine seeking to exclude certain opinions of the defendant's expert, Dr. Clary.

Bobby L. Clary is a registered professional engineer who received a Ph.D. degree in agricultural engineering from Oklahoma State University, where he was formerly a professor. Like Sevart, he has testified in many cases as an expert witness. Following his investigation of Blevins' accident, he disclosed several opinions concerning the design of the Model 644 and the cause of the accident.

■ The plaintiff moves the court to exclude Clary's opinion that the Model 644 as designed and manufactured was not defective or unreasonably dangerous on the ground that Clary has not used a proper legal standard to reach that conclusion.

This argument is based on Clary's testimony, given in his discovery deposition, in which he defined a nondefective product as one that is "no more dangerous than that [which] would be contemplated by normal users of that piece of equipment . . . and that the utility of the product as it's designed and manufactured exceeds the risks associated with the use of that product." (Clary Dep. at 107.) According to Clary, a "normal user" would be a person who has appropriate knowledge and experience with that type of equipment. (*Id.* at 107–08, 167.)

■ Contrary to the plaintiff's contention, Virginia products liability law encompasses a risk-utility analysis in negligent design cases. *See Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1071 (4th Cir.1974) (holding that under Virginia law "[l]iability for negligent design thus 'is imposed only when an unreasonable danger is created [and][w]hether or not this has

4. In a similar case, also involving a round hay baler manufactured by New Holland (a Model 640), a state appellate court allowed an opinion by Sevart that enhanced injury occurred because of the lack of an emergency stop system. *See Hansen v. New Holland N. America, Inc.*, 215 Wis.2d 655, 574 N.W.2d 250, 256 (1997).

occurred should be determined by general negligence principles, which involve a balancing of the likelihood of harm, and the gravity of harm if it happens against the burden of the precautions which would be effective to avoid the harm.' ") (citation omitted); *see also* Restatement (Third) of Torts: Products Liability § 2 cmt. n (1998) (stating that "[r]egardless of the doctrinal label attached to a particular claim, design ... claims rest on a risk-utility assessment.").

Further, I see nothing wrong with Clary's definition of a "normal user" in the context of this case. The reasonable expectations of a consumer of a particular product are certainly part of the risk-utility analysis. *See* Aaron D. Twerski, *From Risk Utility to Consumer Expectation: Enhancing the Role of Judicial Screening in Product Liability Litigation*, 11 Hofstra L.Rev. 861, 895 (1983).

The plaintiff also seeks to exclude any reliance by Clary on a study mentioned by him supporting his conclusion that use of an emergency stop system would increase accidents by encouraging operators to consider the location of the emergency stop device as an additional operator's position. Clary could not recall many of the details of the study, but indicated that Sevart was aware of it.

The plaintiff objects to the use of this study because it was not disclosed by Clary prior to his deposition. *See* Fed. R.Civ.P. 26(a)(2)(B) (requiring initial disclosure of "the data or other information considered by the [expert] witness in forming the opinions"). In addition, the notice of deposition of Clary requested that he produce at his deposition all "studies, tests, [and] research materials ... upon which he bases any opinion in this case." (Clary Dep. Ex. 1.)

Clary should have identified the study in question prior to his deposition. It does not appear that the plaintiff has been unfairly prejudiced, however, in light of the fact that the study has now been described. If plaintiff's counsel is unable to obtain a copy of the study, and so advises opposing counsel, the defendant must arrange for a copy to be supplied reasonably in advance of trial, in order for Clary to rely upon the study for any opinion to be expressed at trial.

## IV

■ Finally, the defendant moves to exclude any evidence of prior accidents involving New Holland round hay balers. The plaintiff desires to introduce evidence of another accident that was the subject of an action against New Holland in the United States District Court for the Eastern District of Texas, in which Roger Hornsby was the injured plaintiff. The plaintiff seeks to introduce the facts of this accident in order to establish notice to New Holland that operators do in fact leave the operator's position without stopping the machine. The defendant contends that the evidence is not relevant because the facts of the accident (including that it was a different model hay baler) are dissimilar to the present case. In addition, the defendant urges that the evidence would be unfairly prejudicial, even if relevant. *See* Fed.R.Evid. 403.

In connection with its motion in limine, the defendant has filed a copy of the discovery deposition of Roger Hornsby taken in the other case on January 30, 1996, in which he described his 1993 accident with a New Holland Model 630 hay baler. Hornsby testified that he had been injured after he had dismounted from the tractor in order to lubricate the chains on the baler while they were moving. After doing so, he saw a piece of wood sticking out of the machine and when he attempted to remove it, his arm was pulled in by the moving belt. Hornsby agreed that he had ignored the decal safety warning that he should not leave the operator's position with the engine running and the PTO engaged. (Hornsby Dep. at 83–85.)

■ Evidence of similar accidents is not generally admissible for the purpose of proving negligence or causation. *See Roll 'R' Way Rinks, Inc. v. Smith,* 218 Va. 321,

237 S.E.2d 157, 160 (1977). Such evidence may be admissible, however, to show notice or actual knowledge by the defendant of a defect in its product. *See General Motors Corp. v. Lupica*, 237 Va. 516, 379 S.E.2d 311, 314 (1989).

While the prior accident involving Roger Hornsby may be relevant to show that New Holland was aware of the fact that operators of towed hay balers may leave their positions in spite of the risk of injury, I find that a balancing of interests dictates that such evidence be excluded pursuant to Federal Rules of Evidence 403. It is true that the similarity required is somewhat relaxed when offering prior accidents to prove notice of a dangerous condition rather than negligence, *see Benedi v. McNeil–P.P.C., Inc.*, 66 F.3d 1378, 1386 (4th Cir.1995), but the court nevertheless maintains "broad discretion" to exclude evidence of prior incidents under rule 403. *See Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1195 (D.C.Cir.1986).

Proof of prior accidents is not easily admitted into evidence because it often results in unfair prejudice, consumption of time, and distraction of the jury to collateral matters. *See id.* at 1198. The plaintiff's expert Sevart, who has investigated scores of similar accidents over the years, will testify of the frequency with which operators place themselves in danger, thus minimizing the utility of the evidence of one other accident. On the other hand, to explore the similarities and dissimilarities of the Hornsby case with the present accident will prolong the trial and risk jury confusion and prejudice. *See Gardner v. Southern Railway Systems*, 675 F.2d 949, 952 (7th Cir.1982).

Accordingly, in the absence of any compelling need to allow introduction of the Hornsby accident, I will exclude it.

## V

For the foregoing reasons, it is **ORDERED** as follows:

(1) The Motion in Limine to Exclude Testimony of J.B. Sevart (Doc. No. 89) is denied;

(2) The Motion in Limine by Douglas M. Blevins (Doc. No. 91) is denied; and

(3) The Motion in Limine to Exclude Evidence of Other Hay Baler Accidents (Doc. No. 92) is granted.