Robin FAIRSHTER Plaintiff,

v.

AMERICAN NATIONAL RED CROSS, et al. Defendants.

No. 1:03CV246 (GBL).

United States District Court, E.D. Virginia, Alexandria Division.

June 15, 2004.

Michael E. Barnsback, DiMuro Ginsberg & Mook, Alexandria, VA, for Plaintiff.

Robert R. Merhige, Jr. Hunton & Williams, Richmond, VA, Richard E. Jordan, Esq., Hamilton & Hamilton, Washington, DC, for Defendant.

### MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on Defendants' Motion for a New Trial. This is a personal injury claim brought by the Plaintiff, Ms. Robin Fairshter, who alleged that she was injured when a negligent Red Cross phlebotomist withdrew her blood on August 10, 2000.[1]

The issues before the court are threefold. First, whether the trial judge erroneously admitted evidence pertaining to negligent hiring, negligent training, negligent supervision, injuries caused by the phlebotomist prior to the incident at issue, and future damages. Second, whether the evidence admitted at trial so inflamed the jury as to influence it to award an excessive verdict. Third, considering the first two issues, whether the Court should grant a new trial.

The Court finds that the evidence at issue was properly admitted, because it is relevant pursuant to Rule 401 of the Federal Rules of Evidence. In addition, the probative value of the evidence outweighs its risk of prejudice, pursuant to Rule 403 of the Federal Rules of Evidence. Also, the Defendants never submitted a list of undisputed facts after the Court's ruling on partial summary judgment found that

negligence had occurred. The Defendants failed to submit the list of undisputed facts pursuant to Rule 56 of the Local Rules for the United States District Court for the Eastern District of Virginia, as well as the trial judge's repeated request. In addition, the Court finds that Ms. Fairshter's jury award was not excessive, because the amount was not so great that it shocked the conscience. The jury's award also fails to convince the Court that the jury was influenced by passion, corruption, or prejudice. Therefore, Defendant's Motion for a New Trial is DENIED.

### I. BACKGROUND

Plaintiff, Ms. Fairshter, filed a complaint against Defendants alleging that during a blood drive, administered by Defendant American National Red Cross on August 10, 2000, the phlebotomist on duty, Ms. Durriyyah Bey, negligently withdrew Ms. Fairshter's blood. Ms. Fairshter alleged that this act resulted in Complex Regional Pain Syndrome[2] (CRPS), a permanent injury. CRPS, according to Ms. Fairshter, causes her pain on a regular basis. CRPS has also left Ms. Fairshter unable to reliably use her hand for most purposes, including interacting with her children, typing, and performing household chores.

Before the trial began, Ms. Fairshter moved for partial summary judgment. Ms. Fairshter claimed that undisputed facts established that the Defendants were negligent. Defendants conceded that Ms.

1. A phlebotomist practices phlebotomy. Phlebotomy is defined as "the act or practice of opening a vein to let or draw blood as a therapeutic or diagnostic measure." Webster's College Dictionary 995 (7th ed.2001).

2. Doctor Campbell, a defense expert, testified that CRPS is an "idiopathic disorder. Idiopathic means we don't know what the cause is. And, it is a syndrome where there is a collection of symptoms." Trial Tr., Oct. 21,

2003, at 216. Doctor Campbell characterized these symptoms as pain; hyperalgesia which is defined as a heightened pain caused by light touching of the skin; edema; pseudo motor changes such as abnormal sweating, coldness of the skin, stiffness of the joints; and trophic changes of the skin such as abnormal hair growth, brittleness of fingernails, and a shiny or thin look to the skin. *Id.* at 216–217.

Bey had failed to use ordinary care, and was therefore negligent in her withdrawal of Ms. Fairshter's blood. The Court granted partial summary judgment in favor of Ms. Fairshter. However, issues of causation and damages remained unresolved.

Shortly before trial, the Defendants submitted a Motion in Limine, which sought to exclude any evidence relating to Ms. Bey's negligence during the trial. Defendants also requested that any evidence of future invasive medical procedures and their costs be excluded. The Court admitted evidence of negligent hiring, training and supervision. The Court also admitted evidence of injuries Ms. Bey caused to other blood donors prior to Ms. Fairshter's blood donation. In addition, the Court excluded evidence relating to Ms. Fairshter's possible future implantation of a spinal cord stimulator. The Court admitted evidence relating to Ms. Fairshter's future ganglion nerve block treatments, but restricted this evidence by allowing testimony stating that Ms. Fairshter would need four ganglion nerve block treatments per year, at $750 per treatment.

After the trial concluded, the jury returned a verdict in favor of Ms. Fairshter, and awarded her $800,000 in damages. In response, the Defendants filed this Motion for a New Trial.

In its Motion for a New Trial, Defendants argue that the Court erred by admitting the following evidence at trial: evidence unrelated to the issues of causation and damages, evidence of negligent hiring, negligent training, and negligent supervision, evidence of prior bad acts, and evidence of future damages. The Defendants further argue that admission of this evidence led to an excessive verdict, and therefore, the Court should grant a new trial.

Ms. Fairshter argues that the Court's evidentiary rulings were proper and did not cause undue prejudice against the Defendants. Ms. Fairshter also argues that the jury award was not excessive, and that the Court should not grant a new trial.

## II. DISCUSSION

### A. *Standard of Review*

Defendants seek a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. Under this Rule, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.Civ.P. 59(a). The United States Court of Appeals for the Fourth Circuit has held that a new trial will be granted if the court finds that "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Services, Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.1996). The first two prongs of the *Atlas* test are factual determinations. *Id.* The third prong requires a policy analysis under which the "judge's unique vantage point and day-to-day experience with such matters lend expertise." *Id.*

### B. *Analysis*

After a review of the evidence admitted and the resulting jury verdict, the Court concludes that the evidence at issue was properly admitted and the jury verdict was not excessive.

#### 1. *Evidentiary Issues*

In Defendants' Motion for a New Trial, they first make a general claim that it was an error to admit evidence unrelated to the

issues of causation and damages. Defendants contend that because the only issues at trial were proximate cause and damages, the admission of any evidence not directly related to proximate cause and damages is irrelevant and highly prejudicial. Defendants specifically dispute the admission of the following evidence. First, evidence that the Red Cross knew Ms. Bey had lied on her job application. Second, evidence that the Red Cross refused to listen to staff complaints regarding Ms. Bey's phlebotomy techniques. Third, evidence that Ms. Bey was on probation at the time she drew blood from Ms. Fairshter. Fourth, evidence that the Red Cross did not properly train Ms. Bey. Fifth, evidence that multiple donors had filed complaints against Ms. Bey and the Red Cross failed to properly respond to these complaints. Sixth, evidence that the Red Cross did not inform Ms. Bey of the complaints against her. Seventh, evidence that donors claimed that Ms. Bey was the worst phlebotomist they had encountered. Eighth, evidence that the Red Cross made no attempt to retrain Ms. Bey. Ninth, evidence that the Red Cross's reporting procedures are inadequate. Tenth, evidence that the Red Cross did not adequately investigate Ms. Fairshter's complaint. Defendants further argue that the admission of this highly prejudicial evidence led to an excessive verdict. The Court admitted this evidence, because the Red Cross continued to dispute the circumstances surrounding how and to what extent Ms. Fairshter was allegedly injured throughout the trial. The Court found that the Defendants' admission of *respondeat superior* with respect to Ms. Bey's actions was not an unqualified admission of liability. The Defendants merely acknowledged that Ms. Bey had been acting as their agent on the day that Ms. Fairshter was allegedly injured. Defendants disputed that Ms. Bey injured Plaintiff in the manner in which

Plaintiff alleged she was injured. In other words, Plaintiff Fairshter alleged that Ms. Bey not only improperly slid the needle into her arm, but that Ms. Bey wiggled the needle, stuck her more than once with the needle, and left her unattended during the blood draw, even after Plaintiff's arm turned blue. The Red Cross, through its medical experts, disputed both the way in which Plaintiff was injured, in addition to contending that Plaintiff was not injured to the extent that she claims.

In Defendants' Supplemental Motion for a New Trial, they made more specific arguments regarding the admission of the evidence listed above. First, Defendants contend that once vicarious liability was admitted by Red Cross, it was error to admit any evidence of negligent hiring, negligent training, and negligent supervision of Ms. Bey. Second, Defendants argue that it was error to admit evidence of prior complaints against Ms. Bey, because this evidence was used to show character, which violates Federal Rule of Evidence 404(b). Third, Defendants claim that it was error to admit evidence of future damages, because this evidence was based, speculatively, on what treatment Ms. Fairshter thought she would need in the future. Defendants specifically dispute the introduction of evidence regarding the need for sympathetic nerve blocks, a method of treatment for CRPS, and lidoderm patches, a pain medication.

*a. Evidence Relating to the Negligent Act*

The Court properly admitted evidence pertaining to the negligent act for three reasons. First, most of the disputed evidence contributed directly to the issue of causation. Second, Defendants failed to comply with Rule 56 of the Local Rules for the District Court of the Eastern District of Virginia, which required Defendants to submit a list of disputed material facts

after a finding of summary judgment. Third, all of this evidence was relevant and was not subject to exclusion due to unfair prejudice, confusion of the issues, or misleading of the jury.

■ Defendants contend that the details of Ms. Fairshter's blood draw, performed by Ms. Bey, were not relevant, because Defendant Red Cross admitted *respondeat superior.* Defendants' contention is not well taken because Defendants' qualified admission of negligence did *not* admit causation or damages.

Defendant's defense at trial was that Ms. Fairshter was not injured as a result of the blood draw and that her medical condition was not caused by the blood draw. At trial, Ms. Fairshter testified that Ms. Bey stuck the needle in her arm more than once, that she experienced pain as a result, that Ms. Fairshter complained to Ms. Bey, and that Ms. Bey left her unattended for a time. Trial Tr., Oct. 22, 2003, at 102–06. At trial, the Defendants, through medical testimony of Doctor Riggs and Doctor Campbell suggested that Ms. Fairshter's injuries could not have occurred as she testified. Dr. Campbell testified, "I do not believe there's mechanically any possibility that a phlebotomy could have caused an Ulnar Neuropathy at the elbow ... There is no possibility that the needle could have gone to the back of the arm. It's just not anatomically possible." Trial Tr., Oct. 21, 2003 at 220. Dr. Riggs questioned whether Ms. Fairshter ever complained about the needle manipulation causing "electric shock" type pain, indicative of nerve damage. Trial Tr., Oct. 21, 2003 at 170. Additionally, the Defendants' doctors testified, based upon the single insurance company medical examination, that Ms. Fairshter was not injured and that she did not suffer from CRPS.

Because the issue of causation, that is, how Ms. Fairshter was injured, if at all, was contested, the facts surrounding the blood draw, what Ms. Bey did or did not do in inserting the needle into Ms. Fairshter's arm, were relevant on the issue of causation. Proximate cause is a cause which "in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *See Cohn v. Knowledge Connections, Inc.,* 266 Va. 362, 585 S.E.2d 578, 582 (2003) (quoting *Beale v. Jones,* 210 Va. 519, 171 S.E.2d 851, 853 (1970)). Under these circumstances, where the issue of what might have happened to cause Ms. Fairshter's injury and where witness and expert testimony contested damages, the sequence of facts surrounding the negligent act were relevant and probative.

■ The Defendants argue that evidence relating to issues outside the specific realm of causation and damages should not have been admitted, because the issue of negligence had already been conceded. Specifically, Defendants address the evidence pertaining to the Red Cross's hiring procedures, the training of Ms. Bey, and Red Cross's response to donor complaints, among other issues. Therefore, Defendants submit, any such evidence would be irrelevant and cumulative. *See* Def.'s Mem. Supp. New Trial at 2–4 (hereinafter Def.'s Mem.). Rule 401 of the Federal Rules of Evidence defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. First, much of the evidence which generally described the circumstances surrounding Defendants' negligent act was relevant, since it contributed to the jury making the determination of the existence of causation more or less probable.

■ Second, the admission of evidence related to the facts surrounding the negligent act was also necessary because of Defendants' noncompliance with Rule 56 of the Local Rules for the United States District Court for the Eastern District of Virginia. Rule 56 required that once Defendants conceded that their agent had been negligent during the phlebotomy performed on Ms. Fairshter, Defendants must submit for trial a list of all material facts which continued to be in dispute. The Defendants did not comply with Rule 56. Therefore, the jury could not be expected to adequately find whether Ms. Bey proximately caused Ms. Fairshter's injuries without also being able to consider the underlying facts surrounding the negligent act. Because the Defendants failed to submit this list, the Court was obliged to admit evidence that would not have been necessary if certain facts regarding the negligent act had been stipulated by Defendants.

■ Third, Defendants contend that because of the qualified admission on liability, Ms. Fairshter should not be permitted to show the facts surrounding the incident. However, the Defendants' qualified admission of liability does not preclude the offer of some evidence of the facts surrounding the incident. Rule 401 of the Federal Rules of Evidence does not require that all evidence of matters no longer in dispute be deemed inadmissible. *See Briggs v. Dalkon Shield Claimants Trust,* 174 F.R.D. 369, 372 (D.Md.1997). Rather, Rule 403 of the Federal Rules of Evidence dictates that relevant evidence *may* be excluded if the danger of unfair prejudice, confusion of the issues, or misleading of the jury substantially outweighs its probative value. *Id.* Therefore, the Court was within its discretion to admit evidence which did not lie within the strict confines of the issues of causation and damages, so long as the

evidence was relevant and not excludable pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

*b. Evidence of Negligent Hiring, Training, and Supervision*

■ The Court also properly admitted evidence of negligent hiring, because Virginia law allows this claim to go forward at trial even when vicarious liability has been admitted.

Defendants argued that since they have admitted vicarious liability pursuant to the doctrine of *respondeat superior,* they cannot also be held liable for the tort of negligent hiring. *See* Def.'s Supplemental Mem. Supp. Mot. New Trial at 4–7 (hereinafter Def.'s Supplemental Mem.). Defendants continue by arguing that once an employer has admitted *respondeat superior* it is unnecessary and highly prejudicial for the court to also consider whether the employer is liable under the theory of negligent hiring. Ms. Fairshter responds by claiming that Virginia, along with a minority of other jurisdictions, recognizes the theories of negligent hiring and *respondeat superior* as separate and distinct. Therefore, Ms. Fairshter claims that Virginia courts should be allowed to consider both theories in one cause of action.

The Supreme Court of Virginia has not yet addressed this issue. The Court notes Defendants' assertion that a majority of jurisdictions require that once an employer admits liability for its employee, any additional claim of negligent hiring must be dismissed by the court, because, according to these courts, the evidence would be prejudicial and unnecessary. *Hackett v. Washington Metro. Area Transit Auth.,* 736 F.Supp. 8, 9–11 (D.D.C.1990); *Bowman v. Norfolk Southern Ry. Co.,* 832 F.Supp. 1014, 1021 (D.S.C.1993).

However, a minority of jurisdictions have held that "an admission of liability

does not preclude an action for both *respondeat superior* and negligent entrustment, training, hiring, retention, or supervision." *Poplin v. Bestway Express*, 286 F.Supp.2d 1316, 1319 (M.D.Ala.2003). These jurisdictions view negligent hiring as a tort distinct from *respondeat superior* and do not allow an agency claim to preclude a separate tort claim. *Marquis v. State Farm Fire and Casualty Co.*, 265 Kan. 317, 961 P.2d 1213, 1225 (1998).

The Supreme Court of Virginia has held that "negligent hiring is distinct from tort liability predicated upon the doctrine of *respondeat superior.*" *Interim Personnel of Cent. Va., Inc. v. Messer*, 263 Va. 435, 559 S.E.2d 704, 707 (2002) (citing *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391, 394 (1988)). These holdings tend to categorize Virginia as a jurisdiction favoring the minority rule. This assertion is further supported by the fact that according to published opinions a Virginia court has never dismissed a claim of negligent hiring because of preclusion by a *respondeat superior* claim. In fact, Virginia courts have allowed both of these claims to go forward in the same action. *See Davis v. Merrill*, 133 Va. 69, 112 S.E. 628 (1922) (allowing theories of *respondeat superior* and negligent training to go to a jury verdict); *See also Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 539 S.E.2d 426 (2000) (discussing trial court's entry of summary judgment on claims of liability under *respondeat superior* and claims of negligence under negligent hiring and retention). Clearly, Virginia law follows the minority rule, which allows claims of *respondeat superior* and claims of negligent hiring to proceed in the same action. Therefore, this evidence was properly admitted at trial.

■ The Court properly admitted evidence of negligent training and negligent supervision, because it was relevant. Specifically, this evidence tended to make the assertion that Ms. Bey's negligent actions caused Ms. Fairshter's injuries more probable than it would be without the evidence. Defendants argued that it was not necessary to raise these additional negligence claims, because they conceded vicarious liability, and, according to Defendants, once they made this concession, the issues of primary negligence became irrelevant, cumulative and prejudicial. *See* Def.'s Supplemental Mem. at 4–7. However, the evidence supporting negligent training and negligent supervision was not admitted to establish additional negligence claims. Rather, this evidence supports Ms. Fairshter's general negligence claim by establishing causation.

Using expert medical testimony, Defendants contested the fact that multiple needle insertions into Ms. Fairshter's arm could have caused Ms. Fairshter's injury. With this testimony, Defendants also claimed that wiggling of the needle while still inserted in Ms. Fairshter's arm could not produce CRPS. Defendant's expert, Dr. Campbell, testified that Ms. Fairshter's injury could have been "a coincidence" and it was not caused by the blood draw. Trial Tr., Oct. 21, 2003, at 222. The issues of Ms. Bey's training, or lack thereof, and prior complaints from other patients about Ms. Bey's blood draw techniques were relevant to show that Ms. Bey was incompetent and that the Defendants were on notice of her failings. Defendants were also on notice of the need to monitor Ms. Bey's work. An employer's failure to respond when on such notice contributes to causation, because it becomes more likely that another injury will result due to Ms. Bey's error.

■ Ms. Bey's training and competence, or lack thereof, shown by other patients experiences with Ms. Bey were relevant on the issue of causation as well. Ms. Bey

was employed to conduct a medical procedure[3] involving the use of a needle, the handling of blood, and patient monitoring. Because Defendants contest causation by claiming that Ms. Fairshter could not have been physically injured as she alleged in her testimony, Ms. Fairshter is entitled to show causation by demonstrating that Ms. Bey was untrained, unqualified, and that prior Red Cross patients had complained about Ms. Bey's blood draw procedures. These matters bear on the cause without which the accident, injury, or damages would not have occurred. *See Beale,* 171 S.E.2d at 853.

In this case, Ms. Fairshter's evidence that Ms. Bey never received proper training and that her supervisors were not adequately monitoring her performance would tend to make it more likely that Ms. Fairshter's injury had occurred in the manner Ms. Fairshter alleged.

■ Defendants further argue that the evidence of Ms. Bey's lack of training and prior complaints against Ms. Bey's blood draw ability was inadmissible because of the risk of prejudice to Defendants. *See* Def.'s Supplemental Mem. at 5. However, Rule 403 of the Federal Rules of Evidence only allows relevant evidence to be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. In this instance, the probative value of the evidence is insurmountable as it is relevant to causation, a core issue of the case and one that was strenuously disputed at trial by both parties.

*c. Evidence of Prior Complaints Against Ms. Bey*

The Court properly admitted evidence of prior blood donor complaints about Ms.

Bey's blood drawing technique, because this evidence demonstrates Ms. Bey's skill and training and is relevant to the disputed issue of causation.

Ms. Fairshter argued that Defendants may not object to the Court's decision to admit evidence of prior complaints against Ms. Bey because they did not preserve their objection during trial. However, reference to the transcript reveals that the Defendants' objections to Ms. Palmer's testimony were preserved. Defense counsel stated:

> I know you said our motion in limine was preserved, but we want to reassert it with Ms. Palmer's testimony. Apparently she is going to testify about procedures that were not followed, experiences that she had with the Red Cross that were negative, unrelated to this immediate event, to the phlebotomy. Trial Tr., Oct. 21, 2003, at 5.

The Court then responded:

> Now for the second time, it is preserved...The record is clear that this Judge has made a record for purposes of judicial economy and to avoid defense counsel having to interrupt the presentation of a witness to make contemporaneous objections. *Id.* at 6.

Defendants had clearly preserved their objections, and the Court may now properly consider the evidentiary rulings Defendants dispute. *See* Fed.R.Evid. 103(a)(2).

■ Evidence of other injuries that Ms. Bey has caused and complaints against Ms. Bey are clearly relevant to the case at hand. This evidence demonstrates the phlebotomist's lack of skill and training, all of which are relevant to the issue of causation. Ms. Bey caused injuries to oth-

---

**3.** Va.Code Ann. §§ 18.2–268.5, 19.2–310.3, 19.2–310.3:1, and 46.2–341.26:5 all require that blood be "withdrawn according to recog-nized medical procedures" in order for the technician who withdrew the blood to escape liability.

er donors before Ms. Fairshter's phlebotomy. Since injury is not a guaranteed consequence of donating blood, the evidence of Ms. Bey's lack of proper training and technique tended to make the assertion her negligent actions caused Ms. Fairshter's injuries more probable than it would be without the evidence, demonstrating that this evidence is clearly relevant under Rule 401 of the Federal Rules of Evidence.

Under the balancing test required under Rule 403 of the Federal Rules of Evidence, the probative value of this evidence is quite high, especially when offered in support of the causation issue. If Ms. Bey caused injuries to multiple donors in the days and weeks leading up to Ms. Fairshter's donation, then it is likely that her improper technique would continue and likely cause Ms. Fairshter's injuries. Defendants' two medical experts contested how Ms. Fairshter was injured and testified that multiple needle insertions could not be the cause of Ms. Fairshter's CRPS. Admitting this evidence was not prejudicial to Defendants.

The complaints against Ms. Bey, submitted into evidence, specifically described the injuries of each similar occurrence, all of which differed only in the degree of discomfort caused to each donor. The jury was fully capable of weighing this evidence and determining whether it makes either Ms. Fairshter's or the Defendants' theory of causation more or less likely.

■■■■ Defendants also argue that Rule 404(b) of the Federal Rules of Evidence precludes the offer of evidence that Ms. Bey caused other injuries. Defendants argue that evidence admitted pursuant to this rule may not be used to establish causation. See Def.'s Supplemental Mem. at 9–10. In support of this assertion, Defendants cite three cases that are not persuasive to this Court.

*Moore v. City of Richmond,* 85 Va. 538, 8 S.E. 387 (1888) and *Roll 'R' Way Rinks, Inc., v. Smith,* 218 Va. 321, 237 S.E.2d 157 (1977) were decided in Virginia state courts. These cases analyze the Virginia common law regarding evidence of prior accidents, and do not reference the Federal Rules of Evidence which dictate the evidentiary rulings of this Court. Specifically, these two cases do not discuss what is admissible pursuant to Rule 404(b) of the Federal Rule of Evidence.

The third case, *Blevins v. New Holland North America, Inc.,* 128 F.Supp.2d 952 (W.D.Va.2001), was decided in the Western District of Virginia, but this Court finds Defendants' use of *Blevins* unpersuasive. The *Blevins* court held that "[e]vidence of similar accidents is not generally admissible for the purpose of proving negligence or causation." *Id.* at 960–61 (citing *Roll 'R' Way Rinks, Inc. v. Smith,* 218 Va. 321, 237 S.E.2d 157, 160 (1977)). The *Blevins* court found that similar accident evidence was "generally" inadmissible for the purpose of proving causation, but indicated this type of evidence could be admitted if there was a compelling need. *Id.* at 961. As indicated previously, this Court finds the disputed issue of causation provides the necessary compelling need. In addition, in support of its holding, the *Blevins* court cites to *Roll 'R' Way,* a Virginia state case discussed above, in which the court does not consider the admissibility of similar accidents pursuant to the Federal Rules of Evidence.

The Fourth Circuit has not yet ruled specifically on whether prior bad acts may be admitted to prove causation, but has noted that Rule 404(b) is "a rule of inclusion" and that the list of permissible uses provided for in the rule itself is not exhaustive. *United States v. Queen,* 132 F.3d 991, 994–95 (4th Cir.1997). In *Queen,* the Court clarified that evidence of

prior bad acts is admissible if the evidence is: (1) relevant to an issue other than character, (2) necessary in the sense that it is probative of an essential claim, (3) reliable, and (4) the potential for prejudice does not substantially outweigh the probative value of the evidence. *Id.* at 997. The *Queen* Court noted that under step 1, "the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." *Id.*

The Court has already discussed its finding that the evidence of prior injuries caused by Ms. Bey is relevant to the issue of causation. The Court adds only that the circumstances surrounding each of the prior instances involving Ms. Bey are exactly the same. In each prior case, the donor complained about Ms. Bey's blood drawing technique, the donor was uncomfortable during the donation, and the donor complained about noticeable injury which resulted afterwards. The similarity of the acts increases the relevance of the prior act evidence.

The Court finds that this evidence was necessary under the *queen* test. Defendants' expert testimony questioned if Ms. Fairshter's injuries were, in fact, caused by the phlebotomy procedure. In response it was necessary for Ms. Fairshter to present evidence demonstrating causation.

The Court also finds that the evidence was reliable. The Court investigated this matter during Defendants' Motion in Limine and found the complaint forms were business records regularly maintained by the Red Cross and were, therefore, reliable. The Red Cross representative at trial testified that after the Red Cross receives the donor complaints, a representative will call the complaining donor, monitor the donor, and may recommend that the donor seek emergency medical assistance.

Finally, the Court must still consider the balancing test required under Rule 403 of the Federal Rules of Evidence. In this case, for the reasons outlined above, the evidence relating to Ms. Bey's prior complaints are probative and would not be too prejudicial towards the Defendants. As the evidence of Ms. Bey's prior acts meets the requirements set forth in *Queen*, it was appropriate for the trial court to allow the evidence.

#### d. Evidence of Future Medical Expenses

 The Court holds that evidence of future medical expenses was necessary to the jury's determination of Ms. Fairshter's adequate damages.

In this action, Ms. Fairshter sought compensatory damages. Compensatory damages are determined to indemnify the injured person for the loss suffered. *See Poulston v. Rock,* 251 Va. 254, 467 S.E.2d 479, 482 (1996). The Defendants argue that all damages were speculative and therefore, should not have been admitted into trial. *See* Def.'s Supplemental Mem. at 12. This argument is unpersuasive. During trial, more than one expert, and at least two from the Defendants, testified as to whether Ms. Fairshter was injured at all. Ms. Fairshter's treating physicians testified as to the extent of her injuries. Therefore, a question of fact involving the principal issues in this case, causation and damages, was submitted to the jury.

At trial, Ms. Fairshter testified that immediately after her blood donation until the present, she has experienced continuous pain, discomfort, and tingling in her arm. Trial Tr., Oct. 22, 2003, at 116, 123. She also experienced a very sharp pain in her thumb and index finger in addition to having periodic shooting pains in that area. *Id.* at 122. When Ms. Fairshter feels a great deal of discomfort, her only option is

to wear her arm brace and try not to touch anything with her left arm or hand. *Id.* at 125. Ms. Fairshter testified that her life has changed in may ways in terms of what she can and cannot do with her left arm and hand. Her limitations include a difficulty in grasping, turning, or closing things, an inability to change diapers, difficulty in holding her son without dropping him, a difficulty in taking out the trash, doing laundry or changing sheets, difficulty playing with her two small children at home or at the park, an inability to give her youngest son a bath, and a general inability to care for her children by performing certain tasks like tying their shoes, changing their clothes, and preparing their food. *Id.* at 137–45.

More than one expert testified that Ms. Fairshter's injuries are permanent. One of Ms. Fairshter's experts, Dr. Moskovitz, stated that in his opinion, Ms. Fairshter's pain may only be controlled, but not cured. The jury found Ms. Fairshter's evidence of causation compelling enough to hold Defendants accountable for the pain Ms. Fairshter has and will continue to suffer. In order to properly calculate the damages due to Ms. Fairshter as a result of Defendants' negligence, the jury must also take into account what her future medical bills will amount to. Ms. Fairshter made a conservative offer of what methods of treatment are needed to manage her pain for the remainder of her life. As a result, the Court limited Ms. Fairshter's estimate of future expenses to four ganglion nerve blocks a year, at $750 per nerve block. This is a conservative figure given the manner in which Ms. Fairshter's life has changed as a result of her injuries. Ms. Fairshter's evidence of future medical expenses was supported by medical testimony that the projected treatment was necessary and related to the blood draw incident. In sum, Ms.

Fairshter's medical evidence was therefore properly admitted at trial.

## 2. Damages

The Court holds that the jury's award of damages to Ms. Fairshter was not excessive because the amount was reasonably calculated based on the extent of Ms. Fairshter's injuries.

When the Court considers whether to set aside a verdict as excessive, it is required to look at the evidence in the light most favorable to the party who received the verdict. *Shepard v. Capitol Foundry of Va., Inc.*, 262 Va. 715, 554 S.E.2d 72, 75 (2001). In this case, the Court must look at the evidence in favor of Ms. Fairshter. Generally, a trial court will not disturb a jury verdict for damages which have been impartially rendered and are dependent upon competent evidence. *Poulston,* 467 S.E.2d at 481. A court will set aside a jury verdict if:

> ...it shocks the conscience of the court creating the impression that the jury was influenced by passion, corruption, or prejudice; that the jury has misconceived or misunderstood the facts of the law; or, the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision. *Id.*

The decision to set aside a verdict is within the inherent discretion of the trial court. *Id.* at 482. In order to determine if this verdict is one that is excessive enough to shock the conscience, it is necessary to look at the factors that would have influenced the jury to award the amount they did. The jury instructions in this case stated that if the jury found in favor of Ms. Fairshter, they should consider the following:

> (1) any bodily injuries she sustained and their effect on her health according to their degree and probable duration; (2)

any physical pain and mental anguish she suffered in the past and any that she may reasonably expect to suffer in the future; (3) any inconvenience caused in the past and any that probably will be caused in the future; (4) any medical expenses incurred in the past and any that may be reasonably expected to occur in the future; (5) any earnings she lost because she was unable to work at her calling. Jury Instruction No. 11.

■ Ms. Fairshter was only thirty-two years old when she was permanently injured due to the negligence of Ms. Bey, Defendants' employee. Many experts, as well as Ms. Fairshter herself, testified during trial that she is in pain on a daily basis, and her injury is incurable. She must live with the pain of this injury for the remainder of her life. Ms. Fairshter is the mother of small children, and her ability to play with and care for these children has been severely limited by her injury. For example, Ms. Fairshter has never been able to bathe her youngest son without assistance. Ms. Fairshter has already expended $11,700 in medical expenses and, as addressed above, will need to undergo many future sympathetic nerve blocks, in addition to pain medication that she requires regularly. Ms. Fairshter has also lost $3,129.36 in earnings. Ms. Fairshter is an attorney, but she is unable to type or carry documents. Ms. Fairshter's job involves responding to inquiries, writing reports, and preparing legal memoranda. Ms. Fairshter's work production has diminished since her injury.

It is clear to the Court that this injury has pervaded every aspect of Ms. Fairshter's life, and there has been no evidence offered that she will ever be restored to the self-sufficient woman she once was. A jury verdict of $800,000 does not come close to shocking the Court's conscience, nor does it convince the Court that the

jury was mistaken in their analysis, or improperly influenced by passion or prejudice. Instead, it seems clear that the jury considered all of the ways Ms. Fairshter's life has changed due to Defendants' negligence, and has attempted to compensate her accordingly.

### 3. *Application of the Standard of Review*

■ The facts and circumstances in this case do not warrant a new trial. The *Atlas* test provides three situations in which a court would be required to grant a new trial. First, if the verdict was against the weight of the evidence. *Atlas,* 99 F.3d at 594. Second, if the verdict was based on evidence which is false. *Id.* Third, if a miscarriage of justice would occur if the verdict were to stand. *Id.* A review of the record and the evidence offered by both parties, demonstrates that the jury verdict is well founded. Consequently, the first prong has not been demonstrated. Neither party disputes that any of the evidence presented to the jury was false, thereby leaving the second prong unfulfilled. The jury had sufficient evidence presented by Ms. Fairshter to conclude that the Defendants proximately caused the injury, and the Court has previously concluded that the damages the jury awarded were not excessive. Thus, Defendants failed to meet the third prong. Therefore, since Defendants have failed to satisfy any of the three prongs of *Atlas,* the facts and circumstances of this case do not warrant a new trial.

### III. CONCLUSION

In conclusion, Defendants have failed to prove that the Court's evidentiary rulings were improper. All of the evidence disputed by the Defendants was relevant pursuant to Rule 401 of the Federal Rules of Evidence and demonstrated a high proba-

tive value which substantially outweighed the risk of prejudice pursuant to Rule 403 of the Federal Rules of Evidence. The Defendants failed to prove that the jury's award of damages to Ms. Fairshter was so excessive that it shocked the conscience, thereby requiring that the award be set aside. Instead, the Court found that the jury carefully weighed the compensatory damages due to Ms. Fairshter and calculated the award accordingly. The Defendants also failed to show that the facts and circumstances of this case warranted a new trial. The Court found that the jury award was fair and would not result in a miscarriage of justice.

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for a New Trial is DENIED.

This clerk is directed to forward a copy of this Order to counsel on record.